UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) ) |
| vs. | ) ) |
| ST. CLAIR MOBILE HOME PARKS, LLC, | ) ) ) Case No. 4:04CV01746 AGF |
| Defendant/Counterclaim Plaintiff/ Third Party Plaintiff/ Third Party Counterclaim Defendant, | ) ) ) ) |
| vs. | ) ) |
| TRIAD CAPITAL ADVISORS, INC., and JOSEPH MONTELEONE, | ) ) ) |
| Third Party Defendants/ Third Party Counterclaim Plaintiffs. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on Plaintiff's motion for partial judgment on the pleadings with regard to Defendant's liability to Plaintiff for breach of contract. For the reasons set forth below, Plaintiff's motion shall be granted.

## BACKGROUND

The record establishes the following: Plaintiff Nationwide Life Insurance Company (Nationwide) is an Ohio company. Defendant St. Clair Mobile Home Parks,

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

LLC, (St. Clair) is a Missouri company. In the spring of 2004, St. Clair sought financing for property, Legends Terrace Apartments, it owned. St. Clair and Triad Capital Advisors, Inc., (Triad) agreed that Triad would act as St. Clair's agent to obtain this financing. According to St. Clair, Triad's Executive Vice President, Joseph Monteleone, told St. Clair that Triad had relationships with more than 20 different lending institutions, including Nationwide. Countercl. at ¶ 12.

In early May 2004, Monteleone informed St. Clair that he had contacted Nationwide and had obtained a favorable loan offer. On May 10, 2004, Monteleone informed St. Clair that St. Clair would have to provide Nationwide with a letter of credit to secure the loan, and that the amount of the letter of credit would be at the most $490,000, and would probably be between $200,000 and $300,000 at the time of the closing of the loan agreement. Countercl. at ¶ 15, ¶ 17. On May 12, 2004, Monteleone gave St. Clair a Mortgage Loan Application from Nationwide for a loan in the amount of $13,250,000 for a term of ten years, secured by a deed of trust and security agreement on the property in question, and under which St. Clair had to repay Nationwide on a monthly payment schedule. According to St. Clair, the Mortgage Loan Application had been filled out almost entirely by Triad. Countercl. at ¶ 16.

On May 13, 2004, St. Clair signed the Mortgage Loan Application and paid an application deposit of $132,500 and a processing fee of $7,000 to Nationwide as provided by the Application. The Mortgage Loan Application named Triad as the Loan Correspondent and provided that Triad may receive compensation from Nationwide, as follows:

> 2. LOAN CORRESPONDENT: This Application is issued through the Loan Correspondent named in Item 1 of Part II of the Application. Applicant [St. Clair] agrees to deal with the Loan Correspondent on any matter arising from Issuance of This Application, or in respect to the loan

2

> closing. Applicant/Borrower and its legal counsel will be receiving specific closing instructions from the Loan Correspondent, Nationwide, and/or Nationwide's legal counsel.
>
> * * *
>
> 40. BROKERS: Nationwide may provide servicing fees and other compensation to the Loan Correspondent or a mortgage banker in connection with the Mortgage Loan.

Ex. C (Part I) to Third Party Compl. The Mortgage Loan Application also provided that the loan was conditioned upon St. Clair's delivery of a letter of credit to Nationwide. The amount of this letter of credit was to be determined as follows:

> Borrower [St. Clair] shall deliver to Nationwide a Letter of Credit . . . in an amount equal to 3 times the annualized deficit that exists at closing between the Net Operating Income being generated by the Security Property and 1.25 times the annual debt service payments due under the terms of the Loan Documents.

Ex. C (Part II, Ex. A) to Third Party Compl. Other provisions of the Mortgage Loan Application provided that "whether or not closing occurs, Applicant/Borrower [St. Clair] agrees to pay or reimburse Nationwide for all fees and expenses incidental to the Mortgage Loan," and that "Nationwide shall have the right to retain the Commitment Fee in full and in addition, to pursue all legal and equitable remedies available to Nationwide, including without limitation, legal action to collect provable damages (including loss of bargain) in excess of the Commitment Fee." Ex. C (Part I, Items 31 and 14) to Third Party Compl. The Application also provided that the closing of the loan would occur on or before July 13, 2004.

Also on May 13, 2004, Monteleone and St. Clair signed a Brokerage Agreement under which St. Clair agreed to pay Triad a brokerage fee of $99,372 and Triad agreed to represent St. Clair to secure the best possible financing available. Ex. A to St. Clair's Answer. St. Clair alleges that Monteleone did not disclose to St. Clair that "he and Triad

3

were agents of Nationwide when they agreed to act as St. Clair's agent in securing financing for Legends Terrace." Countercl. at ¶ 33. Nationwide denied this allegation because it was without sufficient knowledge or information sufficient to form a belief as to its truth. Nationwide's Answer to Countercl. at ¶ 33. According to St. Clair, Monteleone told St. Clair that the term "Loan Correspondent" meant that St. Clair could not negotiate directly with Nationwide, and that any information between St. Clair and Nationwide had to go through Triad. Countercl. at ¶ 21. Furthermore, according to St. Clair, Monteleone never disclosed the fact that Triad would be compensated by Nationwide for obtaining the Mortgage Loan. Countercl. at ¶ 22.

By letter dated June 14, 2004, and addressed to St. Clair c/o Monteleone at Triad, Nationwide informed St. Clair that the Mortgage Loan Application had been approved subject to certain clarifications. One of the clarifications related to the calculation of the amount of the letter of credit. The words "based upon a twenty-eight (28) year amortization schedule" were to be added after the word "payments" in the above-quoted provision. Ex. D to Third Party Compl. According to St. Clair, Monteleone told St. Clair that the clarifications were minor. Countercl. at ¶ 23. On June 17, 2004, St. Clair signed and returned the modified Mortgage Loan Application and paid a commitment fee of $265,000 as provided by the Application.

On July 9, 2004, Monteleone told St. Clair that the amount of the letter of credit required to close the loan amounted to $983,400. According to St. Clair, it contacted its bank, which refused to provide a letter of credit in this amount, and St. Clair did not close the loan as scheduled. Countercl. at ¶ 27. According to St. Clair, sometime after July 13, 2004, St. Clair learned that Triad was Nationwide's agent and would receive compensation as part of this agency relationship. Countercl. at ¶ 28. St. Clair demanded

4

that the loan agreement be rescinded, and that Nationwide return the commitment fees and processing fee paid by St. Clair. Countercl. at ¶ 29. Nationwide refused, but agreed to extend the expiration date of the Mortgage Loan Application to November 29, 2004. Compl. at ¶ 18.

St. Clair was unable to obtain a letter of credit in the amount of $983,400, and the closing did not occur. On December 3, 2004, Nationwide sent St. Clair a letter for the payment of all costs, fees, and expenses incidental or related to the Mortgage Loan Application. St. Clair refused to pay, and on December 14, 2004, Nationwide filed this action against St. Clair for breach of contract claiming that the loan did not close due to St. Clair's failure to fulfill its obligations under the terms and conditions of the Mortgage Loan Application. Nationwide seeks damages, pursuant to the Mortgage Loan Application, for all costs, fees, expenses incidental or related to the Mortgage Loan Application, and legal fees, which, at the date of the filing, amounted to approximately $500,000.

St. Clair raised numerous affirmative defenses, arguing that (1) Nationwide did not establish in the pleadings the essential elements of a breach of contract claim; (2) an issue of fact exists on whether Nationwide disclosed to St. Clair its relationship with Triad, and this issue is material because a failure to disclose would entitle St. Clair to void whatever agreement it had with Nationwide; (3) the damages suffered by Nationwide, if any, were the direct result of the actions of Nationwide's own agent (Triad) in misrepresenting to St. Clair the amount of the letter of credit; (4) Nationwide failed to mitigate its damages, if any; (5) Nationwide is not entitled to recover both actual and liquidated damages; (6) Nationwide's damages, if any, were not reasonably foreseeable; and (7) Nationwide is not entitled to recover any hedge losses.

St. Clair filed a counterclaim seeking to rescind the loan agreement. In the counterclaim, St. Clair alleges that Monteleone and Triad acted as dual agents, both for Nationwide and St. Clair, without informing St. Clair of this dual agency. St. Clair asks the Court to order Nationwide to return all the sums paid by St. Clair to Nationwide. St. Clair also filed a third party complaint against Monteleone and Triad for rescission of the Brokerage Agreement. In the third party complaint, St. Clair seeks damages based on Monteleone and Triad's alleged breach of fiduciary duty owed to St. Clair and negligent misrepresentations during their agency relationship. Monteleone and Triad then filed a counterclaim against St. Clair for payment of the brokerage fee as set forth in the Brokerage Agreement.

## ARGUMENTS OF THE PARTIES

In Nationwide's motion for partial judgment on the pleadings now before the Court, Nationwide asks for judgment in its favor as to St. Clair's liability both on Nationwide's claim for St. Clair's breach of contract and on St. Clair's counterclaim for rescission of the contract. Nationwide argues that there are no issues of material fact and it is entitled to judgment as a matter of law on the question of liability, and that the only issue for trial is the amount of damages owed by St. Clair to Nationwide.

St. Clair relies on the denials contained in its answer, asserting that the Court is limited to a review of the complaint and answer and is precluded from considering allegations in St. Clair's other pleadings, including its third party complaint. St. Clair further asserts that its affirmative defenses listed above, if proven, would defeat Nationwide's claim. Nationwide replies that St. Clair's affirmative defenses are not legally sufficient to defeat Nationwide's motion. Specifically, Nationwide argues that (1) the pleadings (including St. Clair's counterclaim) clearly establish a claim for breach of

contract; (2) no material issue of fact exists on whether Nationwide disclosed to St. Clair its relationship with Triad since the loan agreement makes it clear that Triad was Nationwide's agent; (3) Triad's alleged misrepresentation cannot be imputed to Nationwide; and (4) Nationwide is entitled to damages, even though the determination of the amount of these damages is not relevant at this point since Nationwide is only seeking to establish St. Clair's liability.

## DISCUSSION

A motion for judgment on the pleadings may be granted "only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). In evaluating the motion, a court must accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant. Id. at 593; Syverson v. FirePond, Inc., 383 F.3d 745, 749 (8th Cir. 2004).

At the outset, the Court rejects St. Clair's assertion that the Court cannot look beyond the complaint and answer. Rule 12(c), Fed. R. Civ. P., references the close of "the pleadings," which, under Rule 7, include any counterclaims and third party claims. See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1357 (3d ed. 2004) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint"); Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting earlier edition of Wright & Miller). When considering a motion for judgment on the pleadings, the court may also consider materials that are necessarily embraced by the pleadings which, in this case, includes the Mortgage Loan Application attached to St. Clair's third party complaint. See Porous, 186 F.3d at 1079.

Because this is a diversity claim, the Court must interpret Missouri law in determining whether the elements of Nationwide's breach of contract claim have been satisfied. Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1062 (8th Cir. 2005). Although the pleading standard is liberal, Nationwide must allege facts--not mere legal conclusions--that, if true, would support the existence of its claim. Id. Under Missouri law, "[t]o state a cause of action for breach of contract, a plaintiff must allege the following: 1) the existence of an enforceable contract between the parties; 2) mutual obligations arising under the terms of the contract; 3) defendant did not perform; and 4) plaintiff was thereby damaged from the breach." Rice v. West End Motors, Co., 905 S.W.2d 541, 542 (Mo. Ct. App. 1995) (citing Gilomen v. Southwest Mo. Truck Ctr., Inc., 737 S.W.2d 499, 500-01 (Mo. Ct. App. 1987)).

Based on the pleadings, there is no issue of material fact regarding the existence of an enforceable contract between St. Clair and Nationwide. St. Clair signed the Mortgage Loan Application provided by Nationwide on May 13, 2004, and accepted Nationwide's clarifications to the Application on June 17, 2004. By signing, accepting, and returning the modified Application which was approved by Nationwide, St. Clair entered into a contract with Nationwide. Compl. at ¶ 10 and St. Clair's Answer at ¶ 10.

Regarding Nationwide and St. Clair's mutual obligations, the pleadings establish that there is no issue of material fact. Under the terms of the loan agreement, Nationwide was obligated to make a loan to St. Clair in the amount of $13,250,000 for a term of ten years. Compl. at ¶ 10 and St. Clair's Answer at ¶ 10. As to St. Clair, the Application's terms provide that St. Clair had to deliver to Nationwide a letter of credit in an amount determined by a formula set forth in the modified Application, that St. Clair had to fully and timely comply with the terms and conditions of the Application, and that, as quoted

8

above, "whether or not closing occurs, Applicant/Borrower [St. Clair] agrees to pay or reimburse Nationwide for all fees and expenses incidental to the Mortgage Loan."

The pleadings also show that there is no issue of material fact as to whether St. Clair breached its agreement with Nationwide. Under the formula set forth in the Application, Nationwide calculated the amount of the letter of credit to be $983,400. Compl. at ¶ 17. Even though in its answer to the complaint St. Clair summarily denied that the amount of the letter of credit amounted to $983,400 (St. Clair's Answer at ¶ 17), St. Clair contacted its bank to obtain a letter of credit in this amount (Countercl. at ¶ 27; Third Party Complaint at ¶ 28) and does not now assert the amount required was incorrect. Indeed, in its other pleadings before the Court, St. Clair does not challenge the $983,400 amount and makes claims based on the correctness of this amount. See, e.g.,Third Party Compl. at ¶ 40, ¶ 41. Rather than dispute that the letter of credit's amount is correct, as calculated by Nationwide under the formula set forth in the Application, St. Clair's position is that it was misled by Monteleone and Triad to believe the amount would be less. Countercl. at ¶ 26.

On July 13, 2004, the closing of the loan did not occur. Based on the above facts, Nationwide alleges in its complaint that the loan did not close due to St. Clair's failure to fulfill the terms and conditions of the loan agreement, and that St. Clair thus breached the agreement. St. Clair denied these allegations. St. Clair's Answer at ¶ 20, ¶ 21. However, St. Clair's legal conclusion is not supported by the facts in the record. Indeed, the terms of the Application clearly state that St. Clair had to provide Nationwide with a letter of credit in an amount determined by a specified formula set forth in the Application. The Application also states that St. Clair had to comply with all the terms and conditions of the Application. When St. Clair did not provide the required letter of credit in the amount

9

determined by the formula set forth in the Application, St. Clair did not comply with all the terms and conditions of the Application. Therefore, St. Clair breached its agreement with Nationwide.

Regarding Nationwide's entitlement to damages, the pleadings establish that there is no issue of material fact. Even though St. Clair denies that Nationwide sustained any damages resulting from the nonoccurrence of the closing (St. Clair's Answer at ¶ 27), the Application provides that, whether or not the closing occurred, Nationwide is entitled to recover all fees and expenses incidental to the loan (legal fees, commitment fee, processing fee, closing costs, loss of bargain, etc.). Pursuant to the Application, Nationwide asked St. Clair to pay these fees and expenses but St. Clair refused. St. Clair's Answer at ¶ 23. When St. Clair refused to pay these fees and expenses to Nationwide, Nationwide incurred damages. The Court rejects St. Clair's argument that it is not clear from the pleadings what the terms of the agreement are and what obligations have been performed.

In light of the above conclusions, St. Clair's first affirmative defense, that Nationwide failed to state a breach of contract claim, is without merit. The Court will now examine the other affirmative defenses raised by St. Clair to determine if they are legally sufficient to defeat Nationwide's motion for partial judgment on the pleadings with regard to St. Clair's liability.

In St. Clair's second affirmative defense, St. Clair erroneously claims that it is entitled to rescission of the agreement with Nationwide because Nationwide, Monteleone, and Triad knew that Triad also acted as St. Clair's agent and failed to disclose this information to St. Clair. Under Missouri law, an agent can act for both parties to a contract only if the dual agency relationship is disclosed and consented to by both parties,

otherwise, the contract is voidable by either party. Hall v. Williams, 50 S.W.2d 138, 139 (Mo. 1932) (citing McElroy v. Maxwell, 14 S.W. 1, 4 (Mo. 1890)).

Here, even though St. Clair alleges that Monteleone and Triad never disclosed that they were Nationwide's agents (Countercl. at ¶ 21, ¶ 33), the Application, as quoted above, makes it clear that Triad was Nationwide's Loan Correspondent, and that St. Clair had to deal with Triad "on any matter arising from issuance of this Application." The Application also provides that the Loan Correspondent may receive compensation from Nationwide. The fact that Nationwide, Triad, or Monteleone may not have disclosed this information to St. Clair verbally is irrelevant, since the information is provided by the Application which was signed by St. Clair. Under Missouri law, "'one who signs a contract is presumed to have known its contents and accepted its terms.'" Warren Supply Co. v. Lyle's Plumbing, L.L.C., 74 S.W.3d 816, 819 (Mo. Ct. App. 2002) (quoting Wired Music, Inc. of the Great Midwest v. Great River Steamboat Co., 554 S.W.2d 466, 469 (Mo. Ct. App. 1977)). Therefore, St. Clair's dual agency defense is not legally sufficient to defeat Nationwide's motion for partial judgment on the pleadings.

St. Clair's third affirmative defense, that if Nationwide sustained any damages, it was the result of the negligent representations of Monteleone and Triad, who were Nationwide's own agents, also fails. Under Missouri law, "in a dual agency one principal cannot charge the other principal, who is not at fault, with the misconduct of the common agent because the agent owes no more duty to one than another." Weems v. Montgomery, 126 S.W.3d 479, 486 (Mo. Ct. App. 2004); see also, Thomason v. Miller, 555 S.W.2d 685, 688 (Mo. Ct. App. 1977). St. Clair did not introduce in the pleadings any facts identifying a fault imputable to Nationwide. That Nationwide allegedly did not verbally disclose to St. Clair that Triad was Nationwide's agent cannot constitute such

11

fault as the Application clearly discloses that Triad was the Loan Correspondent, that St. Clair was obligated to deal only through Triad, and that Triad may receive compensation from Nationwide.

St. Clair's remaining affirmative defenses are irrelevant since they are related to the determination of the amount of Nationwide's damages.  Nationwide's motion for partial judgment on the pleadings seeks judgment only on St. Clair's liability to Nationwide for breach of contract and St. Clair's counterclaim for rescission of the contract.  Nationwide does not ask this Court to rule, at this time, on the determination of the amount of damages sustained by Nationwide.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for partial judgment on the pleadings [Doc. # 23 ] is **GRANTED**.  Judgment is entered on behalf of Nationwide Life Insurance Company and against St. Clair Mobile Home Parks, LLC, on the issue of St. Clair's liability both on Nationwide's claim for St. Clair's breach of contract and on St. Clair's counterclaim for rescission of the loan agreement.

Dated this 13th day of July, 2005.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE