UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff/Counterclaim Defendant, | )<br>) |
| vs. | )<br>) |
| ST. CLAIR MOBILE HOME PARKS, LLC, | )<br>)<br>) |
| Defendant/Counterclaim Plaintiff/<br>Third Party Plaintiff/<br>Third Party Counterclaim Defendant, | )<br>)<br>)<br>) |
| vs. | )<br>) |
| TRIAD CAPITAL ADVISORS, INC., and JOSEPH MONTELEONE, | )<br>)<br>) |
| Third Party Defendants/<br>Third Party Counterclaim Plaintiffs. | )<br>) |

Case No. 4:04CV01746 AGF

## **MEMORANDUM AND ORDER**

This matter is before the Court following a hearing on the motion of Capital Advisors, Inc., and Joseph Monteleone (collectively referred to herein as "Triad") to compel compliance with a subpoena served on counsel for St. Clair Mobile Home Parks, LLC ("St. Clair"), Mr. William Bruin, and Husch & Eppenberger, LLC. For the reasons set forth below, the motion to compel shall be granted in part and denied in part.

## BACKGROUND

Mr. Bruin, of the law firm Husch & Eppenberger, LLC ("Husch"), represented St. Clair during the negotiation of a loan from Nationwide Life Insurance Company ("Nationwide") to finance the Legends Terrace Apartments in Eureka, Missouri (the "Legends"), owned by St. Clair. Triad was St. Clair's broker for the loan. St. Clair failed to close on the loan because it could not provide a letter of credit in the amount required.

Nationwide brought this action on December 4, 2004, against St. Clair for damages incurred as a result of St. Clair's failure to close on the loan. St. Clair asserted a counterclaim for rescission and also filed a third party complaint against Triad claiming that (1) the brokerage agreement between Triad and St. Clair was void because Triad failed to disclose to St. Clair that Triad was also Nationwide's agent (Count I); (2) Triad breached its fiduciary duty to St. Clair by failing to disclose that Triad would receive compensation from Nationwide (Count II); and (3) Triad negligently misrepresented to St. Clair the amount that would be required for the letter of credit (Count III). St. Clair alleges that on July 9, 2004, Triad told St. Clair the actual amount of the letter credit required by Nationwide, which was an amount much higher than previously represented by Triad. Triad has asserted a counterclaim against St. Clair for an unpaid brokerage fee.

In its answers to interrogatories, St. Clair stated that its attorney, Mr. Bruin, had communications with Triad and with Nationwide's attorney regarding the loan documents required for closing the loan. On April 13, 2005, Triad served Husch with a subpoena under Federal Rule of Civil Procedure 45 seeking (1) any and all documents in its files related in any way to the Legends; (2) any and all documents in its files related to

2

services or advice provided to St. Clair or its main principal, Maha Alul, related to the Legends; (3) any and all notes and communications related to the property or the representation. St. Clair and Husch argue that the subpoena is overbroad, and object that certain of the documents are covered by the attorney-client or work product privileges.

With regard to the attorney-client privilege, Triad maintains that St. Clair waived the privilege by claiming negligent misrepresentation in its third party complaint, thereby placing in issue the reasonableness of any reliance by St. Clair upon Triad's representations regarding the terms of the loan, and specifically, the amount of the letter of credit that would be required. According to Triad, in claiming negligent misrepresentation, St. Clair has opened the door to exploration of other persons, documents, and information upon which St. Clair might have relied, and this exploration necessarily includes all information from Mr. Bruin and his law firm. Triad also notes that only legal advice is privileged, not business advice or fact information.[1]

On July 13, 2005, the Court granted Nationwide's motion for judgment on the pleadings with regard to St. Clair's liability to Nationwide for breach of contract. The amount of damages remains to be determined. A hearing was held on the present motion to compel on July 14, 2005, at which the Court determined that the subpoena was overbroad, and limited document production to the 2004 time period and to undated documents pertaining to the financing of the project. At Triad's request, the Court also

---

[1] Triad also originally asserted that St. Clair had waived its privilege by failing to produce a privilege log, but withdrew this argument following St. Clair's production of a log. (Doc. #42, p. 2).

3

directed Husch to submit for in camera review those documents within the above time frame as to which it was asserting a claim of privilege, and Husch has done so.

As the Court was preparing to issue its order on the in camera documents, Triad filed a supplemental memorandum on October 12, 2005, asserting a new basis for production. In its supplemental filing, Triad asserts that Ms. Alul, the managing member and 98 percent owner of St. Clair, testified without objection regarding her conversations with Mr. Bruin during the months leading up to the loan closing. Triad has submitted excerpts from this deposition, and argues that Ms. Alul's testimony regarding particulars of her communications with Mr. Bruin waived the attorney-client privilege with regard to the documents sought. No response to Triad's supplemental memorandum has been filed.

## DISCUSSION

In diversity cases, state law is applied to resolve attorney-client privilege claims. Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000); Gray v. Bicknell, 86 F.3d 1472, 1482 (8th Cir. 1996). Under Missouri law, the attorney-client privilege attaches to prevent discovery of communication or advice received from an attorney if the following three-part test is met: "(1) the attorney-client relationship must have existed at the time the communication was made or advice given; (2) the attorney-client relationship must have existed as to the subject matter of the communication or advice, or (3) the communication must have been made to the attorney in his professional capacity and on account of the attorney-client relationship." Bd. of Registration for Healing Arts v. Spinden, 798 S.W.2d 472, 475-76 (Mo. Ct. App. 1990) (citing State ex rel. Great Am. Ins. Co. v. Smith, 574 S.W.2d 379, 386 (Mo. 1978) (en banc) (adopting a

broad interpretation of the privilege, and holding that letters in which attorney gave advice to insurers as to his opinion and investigation into fire, gave his advice as to insurers' obligation to pay under the policies, and kept them advised of his investigation into the matter were protected from discovery by the privilege)).

The privilege belongs to the client, and matters falling within the privilege cannot be discovered absent the client's consent or waiver. Dansher v. Smith, 666 S.W.2d 452, 456-67 (Mo. Ct. App. 1984); Mo. R. Civ. P. 56.01(b). The privilege protects "confidential communications between an attorney and client concerning representation of the client. The policy is fundamental, and disclosure is the exception." State v. Timmons, 956 S.W.2d 277, 285 (Mo. Ct. App. 1997) (citation omitted).

The bounds of the attorney-client privilege are not limitless, however. Discoverable factual information is not made privileged merely "by being recited by the attorney or the client in their confidential communications." Great Am. Ins. Co., 574 S.W.2d at 385. Nor does the privilege apply to business advice, as opposed to legal advice. The courts have recognized, though, that "legal advice concerning commercial transactions is often intimately intertwined with and difficult to distinguish from business advice," and the privilege may attach to communications involving transactions that mix the two. See Sedco Int'l, S.A., v. Cory, 683 F.2d 1201, 1205 (8th Cir. 1982) (citing 8 J. Wigmore, Wigmore on Evidence § 2296 (1961)); cf. In re Bieter Co., 16 F.3d 929, 939 n.9 (8th Cir. 1994) (under federal law, the privilege is applicable to "communications that mix business and legal advice").

5

The attorney-client privilege also does not ordinarily attach to information when third parties are included in the communication or to information the client expects to be communicated to third parties. Lipton Realty, Inc. v. St. Louis Hous. Auth., 705 S.W.2d 565, 570 (Mo. Ct. App. 1986). Nor does a communication with a third party become privileged merely because it is thereafter carbon copied to a lawyer. United States Postal Serv. v. Phelps Dodge Refining Corp, 852 F. Supp. 157, 163 (E.D.N.Y. 1994). As discussed further below, the privilege may also be waived.

**Documents Not Privileged**

Following a careful review of the documents submitted in camera, the Court finds that the bulk of the documents are not covered by the attorney-client privilege. A number of the documents submitted to the Court are simply copies of documents created by other parties, which are not privileged. Documents that fall into this category are the form of Letter of Credit Agreement (0020-27); other loan document drafts (0248-57; 0258-87; 0316-27); the loan closing checklist and cover letter (0356-59); and the final loan documents (0397-435). For the most part, any cover letters accompanying said documents communicated only factual information, which includes the letter enclosing the title insurance policy (0241). A draft of the loan document form authored by Nationwide (0005-0019) did include a few handwritten notes of counsel, but only the notes themselves are arguably privileged. Inasmuch as St. Clair has not demonstrated that those notes were communicated to the client, however, even here the privilege may not attach.

Several of the documents were not intended to be confidential, but rather were intended to be filed in some public fashion or disseminated to others. These include the requests to run UCC searches and the UCC search documents (0328-52; 0353-55; 0361-66); and the June 30, 2004 cover letter (0360). Even if some of the communications regarding the UCC documents may not have related directly to the filing, no privilege attaches either to the documents pertaining to the UCC filings or the stock certificate forwarded to Ms. Alul (0242-45), as such documents concern business rather than legal matters. See, e.g., Christman v. Brauvin Realty Advisors, Inc., 185 F.R.D. 251, 256 (N.D. Ill. 1999) (drafts of proxy statements and letters regarding the drafts not legal advice); Montgomery v. Lefwich, Moore & Douglas, 161 F.R.D. 224, 227 (D.D.C. 1995) (draft by-laws, security agreement, and incorporation documents concerned business and not legal matters, and did not contain legal advice).

While at first blush one of the documents pertaining to a survey problem (0367-69) might appear to be privileged, upon review of all of the documents on this subject, it is clear that the survey problem was raised by counsel for Nationwide and discussed by Nationwide, Triad, and counsel for St. Clair; and the document drafted and forwarded to Ms. Alul by counsel was prepared at the request of the lender in anticipation that it would be shared with other parties to the transaction. As such, no privilege attaches to these documents. (0367-79; 0370-71; 0372-74). Certainly no privilege could attach to the third party communications contained in these latter documents, which constitute the bulk of these communications. Likewise, the "No Management Letter" (0376) was prepared at

7

the request of and presumably shared with the lender, and the cover letter (0375) simply communicates that fact and provides instructions for execution.

A number of emails were submitted for review (0246-47; 0290-91; 0292-95; 0296-99; 0300-07; 0308-15). The bulk of these emails reflect communications with third parties, and clearly these communications are not covered by the attorney-client privilege. To the extent these third party communications were ultimately forwarded to counsel or from counsel to Ms. Alul, the Court finds little that could be deemed legal advice as opposed to factual information.

As such, apart from very few comments contained in cover letters or emails, the only documents that appear to be covered by the attorney-client privilege are the handwritten notes of counsel dated May 12, 2004 (0001-03), to the extent they were shared with St. Clair or Ms. Alul; possibly the handwritten notes on the loan document form (0005-19) and the notations on another loan document form (0020-27); the cover letter, but not attachments, dated July 13, 2004 (0397), but even here, the Court finds no legal advice contained in the cover letter; and the handwritten notes of Mr. Bruin's conversation with Ms. Alul on July 12, 2004 (0004).

**At-Issue Waiver**

Under Missouri law, "[t]he attorney-client privilege is waived when the client places the subject matter of the privileged communication in issue." <u>Barone v. United Indus. Corp.</u>, 146 S.W.3d 25, 31 (Mo. Ct. App. 2004). Missouri courts have recognized two situations in which at-issue waiver is "commonly" found.

8

> The first is when proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client communication--for example, when a client uses reliance on legal advice as a defense or when a client brings a legal malpractice action. The second is when a client's testimony refers to a specific privileged document.

Baker, 209 F.3d at 1055 (internal citations omitted); see also State ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d 832, 837 (Mo. Ct. App. 1995) ("Most commonly, [at-issue] waiver may be invoked where proof of the elements of a party's claim will necessarily entail proof of the contents of an attorney-client communication, such as a claim of reliance on legal advice as an element of a claim or defense).

The elements of a negligent misrepresentation claim in Missouri are: (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's reliance on the information, the listener suffered a pecuniary loss. Kesselring v. St. Louis Group, Inc., 74 S.W.3d 809, 813 (Mo. Ct. App. 2002) (adopting the Restatement (Second) of Torts § 552 test); see also Gurley v. Montgomery First Nat'l Bank, N.A., 160 S.W.3d 863, 870 (Mo. Ct. App. 2005) ("justifiably relied" equated to "reasonably relied"); Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (a party is not justified in relying on a speaker's representation if the representation concerns a future action of a third party that is outside of the speaker's control).

Triad cites several cases that applied the at-issue waiver in the context of fraud allegations, primarily Minebea Co., Ltd. v. Papst, 355 F. Supp. 2d 518, 524 (D.D.C. 2005). Triad, however, has not cited any Missouri authority for applying the at-issue waiver to the attorney-client privilege to all misrepresentation cases in which the client may have discussed that subject matter of the alleged misrepresentation with his attorney, and at the hearing Triad admitted it was aware of no such Missouri case law.

The closest Triad comes to pertinent authority is dicta in Sedco International, S.A., a case applying Iowa law. In that case, the defendant sued for breach of an agreement to finance an oil drilling venture and filed a counterclaim alleging that he was induced to enter into the agreement by the plaintiff's fraudulent and negligent misrepresentations. At trial, the district court sustained the counterclaim plaintiff's attorney-client privilege with regard to advice his attorneys may have given him prior to entering into the agreement. The jury awarded the counterclaim plaintiff damages on his counterclaim, and on appeal the counterclaim defendant argued that the trial court erred in its ruling on the attorney-client privilege. The counterclaim defendant argued that the counterclaim plaintiff had waived the privilege by putting his reasonable reliance on the counterclaim defendant's misrepresentations at issue.

The Eighth Circuit first stated that "by asserting fraud, [counterclaim Plaintiff], at most, waived his right to assert the [attorney-client] privilege to prevent disclosure of communications which might have proven he did not rely on [counterclaim Defendant] employees' statements or that such reliance was unreasonable." Id. at 1206. The Court added, however, that "only certain types of information could have made [counterclaim

plaintiff's] reliance unreasonable. . . . [W]e cannot perceive how receipt of ordinary legal advice could have made reliance unreasonable. Only evidence that [counterclaim plaintiff] received new factual information or technically expert analysis of known facts might have revealed that reliance was unreasonable." Id. at 1207. The appellate court found that the lower court did not abuse its discretion by sustaining the attorney-client privilege of the counterclaim plaintiff. Id.

Contrary to Triad's case authority, numerous courts have refused to apply implied or "at issue" waiver in this context. See, e.g., Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) (insured did not waive attorney-client privilege by bringing coverage lawsuit against insurer, even though action put insured's state of mind at issue and attorney-client communications could be relevant to that state of mind); Pippenger v. Gruppe, 883 F. Supp. 1201, 1206-07 (S.D. Ind. 1994) (plaintiff's filing of securities lawsuit, element of which was plaintiff's justifiable reliance on defendant's oral representations and omissions, did not give rise to implicit waiver of attorney-client privilege); Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 414, 416 (D. Del. 1992) (in bringing action against insured for defense indemnification, insured did not waive the privilege with respect to documents related to underlying action against insured, documents insurer argued it needed to determine reasonableness of insured's actions in underlying action); see generally, Standard Chartered Bank v. Ayala Int'l Holdings (U.S.), Inc., 111 F.R.D. 76, 81 (S.D.N.Y. 1986). These cases, and other cases cited by St. Clair in its opposition brief (Doc. # 40), specifically reject the concept

that a party loses the privilege "when his or her state of mind is put in issue in the action." Rhone-Poulenc Rorer, Inc., 32 F.3d at 864.

There is little in the language of the Missouri cases on waiver to suggest that the Missouri Supreme Court would necessarily adopt the expansive approach to the at-issue waiver advanced by Triad, finding that all communications pertaining to the transaction were waived by filing the third party claim of negligent misrepresentation. Under Missouri law, the principle behind the privilege is "fundamental," and the third party claim here is not similar to the type of claim, such as a claim in which reliance on legal advice is an element, in which Missouri courts have recognized an at-issue waiver. Even if the Court were to adopt the somewhat more narrow approach expressed in Sedco as indicative of how the Missouri courts might resolve the issue, only possibly the handwritten notes of May 12, 2004, and very few of the emails between Ms. Alul and Mr. Bruin in April and May 2004, might conceivably bear upon whether St. Clair justifiably relied upon Triad's alleged misrepresentations about the amount of the letter of credit.

The Court need not resolve whether the attorney-client privilege was waived with respect to these documents on this ground, however, as the Court finds, for the reasons stated below, that the privilege with respect to these documents was waived by Ms. Alul's deposition testimony.

**Disclosure Waiver**

In its supplemental filing, Triad asserted that in her September 14, 2005 deposition testimony, Ms. Alul effectively waived the attorney-client privilege with

respect to documents covered by the privilege by relating her conversations with Mr. Bruin regarding the terms of the loan application. Under Missouri law, a "voluntary disclosure of information which is inconsistent with the confidential nature of the attorney-client relationship waives the privilege." Gray, 86 F.3d at 1482.

Here, Ms. Alul testified in her deposition about the substance of telephone conversations with Mr. Bruin regarding the terms of the loan application, including the amount of the letter of credit. Counsel for Triad asked Ms. Alul whether she had any conversations with Mr. Bruin about any terms of the loan application before taking the signed application to Triad on May 13, 2004. Ms. Alul responded, "Yes," and without any further prompting, proceeded to provide a "play-by-play" account of several conversations between herself and Mr. Bruin. She recounted that Mr. Bruin said, "Oh, you know that you have a letter [sic], to produce a letter of credit on closing," to which Ms. Alul testified that she responded, "Yes, I know, but don't worry about that. Joe [Monteleone] already explained that to me. I know the amount. I already called Jason, and I got the approval for it." Ms. Alul continued to testify about the remainder of her conversation with Mr. Bruin, which turned to other aspects of the loan application. Alul Depo. at 97-98. Ms. Alul also testified about the substance of a telephone conversation she had with Mr. Bruin on July 12, 2004. Tr. at 117.

The attorney-client privilege regarding communications between St. Clair and Mr. Bruin belongs to St. Clair. By voluntarily providing information pertaining to those communications at issue here, St. Clair waived the privilege with regard to those communications. The Court believes that EEOC v. Exel, Inc., 190 F. Supp. 2d 1179,

13

1181 (E.D. Mo. 2002), cited by Triad in its supplemental memorandum, is on point and supports this conclusion.  See also United States v. Workman, 138 F.3d 1261, 1263 (8th Cir. 1998); cf. Barone, 146 S.W.2d at 31 (privilege not waived where client did not testify as to subject matter of his communications with attorney).  As noted above, no response has been filed to the supplemental memorandum.

As such, to the extent the attorney-client privilege might otherwise attach to the May 12, 2004 handwritten notes, the attorney notes on the loan application documents, or the cover letters or emails between Mr. Bruin and Ms. Alul prior to the execution of the loan documents, the Court finds that the privilege has been waived.

**<u>Work Product Privilege</u>**

With respect to four documents submitted for the Court's in camera review, Husch's log claims a privilege based upon "mental impressions" or, in other words, the work product privilege which applies to an attorney's conclusions, mental impressions, opinions, and legal theories concerning litigation.  These documents are two sets of handwritten notes, written on May 12, 2004 (0001-02), and July 12, 2004 (0003-04), respectively; and the two drafts of the loan documents, upon which there are undated attorney notations (0005-19, 0020-27).

Unlike the attorney-client privilege, the work product privilege is governed by federal law.  PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002).  In order to protect an attorney's work product, the party seeking protection must show the materials were prepared in anticipation of litigation; work product is not discoverable unless the party seeking discovery has a substantial need for the materials

and cannot obtain the substantial equivalent through other means.  Id.; Fed. R. Civ. P. 26(b)(3).

With regard to the July 12, 2004 handwritten notes, inasmuch as they postdated when Triad allegedly told St. Clair the actual amount of the letter of credit that was required to close the loan, the Court finds that the document was prepared in anticipation of litigation.  Ms. Alul did openly testify about the conversation with counsel that these notes relate to, thereby waiving the attorney-client privilege regarding the conversation and opening the door to examination of Mr. Bruin regarding the content of the conversation.  The attorney notes themselves are different, however, reflecting the mental impressions of counsel, and as such are protected by the work product privilege.  Triad and Monteleone have not made the necessary showing of hardship and need required by Rule 26(b)(3) to overcome the privilege.  See In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977) ("[C]ourts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client.").  The other three documents mentioned above cannot be said to have been prepared in anticipation of litigation.

## **CONCLUSION**

The bulk of the documents submitted to the Court are not covered by the attorney-client privilege.  To the extend particular portions of cover letters or emails prior to July 12, 2004, might be covered by the attorney-client privilege, it has been waived as to these documents by the deposition testimony of Ms. Alul.  Only the July 12, 2004

15

notes of counsel, which are covered by the work product privilege, may be withheld from production.

Accordingly,

**IT IS HEREBY ORDERED** that Triad's motion to compel [Doc. #35] is **GRANTED in part** and **DENIED in part**. To the extent the subpoena seeks documents prior to 2004 and unrelated to the financing of the property in question, Triad's motion to compel is denied. The motion is granted with respect to all documents submitted for the Court's in camera inspection, except the notes of counsel from July 12, 2004 (0004).

**IT IS FURTHER ORDERED** that Mr. Bruin shall have up to and including **December 12, 2005**, to comply with this Order.

**IT IS FURTHER ORDERED** that Triad's request for attorney's fees related to the motion to compel is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of December, 2005.