UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff/Counterclaim Defendant, | )<br>) |
| vs. | )<br>) |
| ST. CLAIR MOBILE HOME PARKS, LLC, | )<br>)<br>) Case No 4:04CV01746 AGF |
| Defendant/Counterclaim Plaintiff/<br>Third Party Plaintiff/<br>Third Party Counterclaim Defendant, | )<br>)<br>)<br>) |
| vs. | )<br>) |
| TRIAD CAPITAL ADVISORS, INC., and JOSEPH MONTELEONE, | )<br>)<br>) |
| Third Party Defendants/<br>Third Party Counterclaim Plaintiffs. | )<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on (1) the motion of third-party Defendants Triad Capital Advisors, Inc., and Joseph Monteleone (jointly referred to herein as "Triad"), for summary judgment on the third-party claims of St. Clair Mobile Home Parks, LLC ("St. Clair") against Triad, and (2) Triad's motion for summary judgment on its counterclaim against St. Clair under the brokerage agreement between Triad and St. Clair. For the reasons set forth below, Triad's motions shall be denied.

# BACKGROUND

The factual background to this case is set forth in the Court's Order dated July 13, 2005, concluding that St. Clair had breached a loan application entered into with Nationwide Life Insurance Company for a commercial "securitized mortgage loan" in the amount of $13,250,000. Briefly, Triad Capital Advisors, Inc., with Joseph Monteleone acting on behalf of Triad, was the loan correspondent which arranged for the loan with St. Clair's managing member, Mahal Alul, pursuant to a brokerage agreement between St. Clair and Triad. The written brokerage agreement required St. Clair to pay Triad a fee of $99,375 upon the closing of the loan. The brokerage agreement provided that if St. Clair "intentionally decides not to close the loan, through no fault of Triad or [St. Clair], then the fee shall be considered earned and payable."

The loan application required St. Clair to pay Nationwide a Commitment Fee of $397,500, to be returned to St. Clair upon the closing of the loan. The loan was scheduled to close by July 13, 2004, by which time St. Clair was to provide Nationwide with a letter of credit in an amount to be calculated by a formula set forth in an exhibit to the application, as follows:

> Borrower shall deliver to Nationwide a Letter of Credit with an expiration date of no earlier than 18 months after the Closing Date in acceptable form and substance and issued by a bank satisfactory to Nationwide in an amount equal to 3 times the annualized deficit that exists at closing between the Net Operating Income being generated by the Security Property and 1.25 times the annual debt service payments due under the terms of the Loan Documents. For purposes of this paragraph, "Net Operating Income" shall mean the annualized rents and expense reimbursements to be received from tenants of the Security Property pursuant to leases approved by Nationwide where the tenants are paying rent (i.e., any free rent periods must have expired), are in occupancy, and open for business, minus Operating Expenses, all of which are to be calculated as of the Closing Date. -

2

> Operating Expenses for purposes hereof shall be the annualized expense of the Security Property, including, but not limited to, a management fee equal to 3% percent of the annualized rental income and other operating expenses of $3,162 per Unit; provided, however, that annualized Operating Expenses for purposes hereof shall not be less than $611,264. Property tax expenses shall be calculated assuming the completed Improvements are fully assessed and using the most recent tax rate available (whether certified of not). This Letter of Credit shall be released by Nationwide when Net Operating Income received is at least 1.25 times ("Shortfall Coverage Test") as great as the annual debt service on the Mortgage Loan for a period of three consecutive months.

By letter dated June 14, 2004, Nationwide accepted St. Clair's application subject to certain modifications, one of which related to the above provision. The words "based upon a twenty-eight (28) year amortization schedule" were to be added after the word "payment" in the sixth line above, and after "times" in the third from bottom line.

St. Clair accepted the changes on June 17, 2004, and completed payment of the Commitment Fee. St. Clair was then unable to provide a letter of credit in the amount required by the application ($983,400) by the closing date, which had been extended to November 29, 2004. On December 14, 2004, Nationwide filed this diversity action against St. Clair for breach of contract, seeking approximately $500,000 in damages in addition to the Commitment Fee, which it retained.

On January 7, 2005, St. Clair filed a third-party complaint against Triad for rescission of the brokerage agreement between St. Clair and Triad, breach of fiduciary duty, and negligent misrepresentation, all based upon the misrepresentation to Alul of the amount of the letter of credit that St. Clair would have to provide Nationwide to close the loan. It is undisputed that Monteleone told Alul both before and after the June 14, 2005 change to the application, that this amount would be under $500,000. It is also

3

undisputed that had the loan closed, Triad would have received an annual fee from Nationwide for servicing the loan. St. Clair asserts that it would not have entered into the loan application had it known the true magnitude of the letter of credit called for by the application.

As noted above, on July 13, 2005, this Court granted partial summary judgment to Nationwide concerning St. Clair's liability. The Court held that by failing to provide the letter of credit as required in the application, St. Clair breached its agreement with Nationwide. On September 23, 2005, St. Clair filed a first amended third-party complaint, which did not significantly change the bases of her claims.

Triad argues that it is entitled to summary judgment on St. Clair's negligent misrepresentation claim because St. Clair cannot prove two elements of such a claim, namely, that St. Clair was justified in relying upon Triad's representation as to the amount of the letter of credit that was required, and that Triad owed a duty to St. Clair which Triad breached. Specifically, Triad argues that Ms. Alul, a professor of economics, did not have a right to rely upon Triad's representations at issue, which were based upon "readily available information." Triad further argues that Triad was under no duty to advise St. Clair as to the meaning and effect of the loan application or Nationwide's June 14, 2004 letter.

With regard to the claim for breach of fiduciary duty, Triad argues that the record establishes that it and St. Clair did not have a fiduciary relationship, because there is insufficient evidence from which a reasonable trier of fact could find that St. Clair surrendered its independent judgment to Triad. According to Triad, it was merely an

4

independent contractor hired for the purpose of obtaining a loan commitment. Triad further agues that, even assuming a fiduciary relationship were established, there is insufficient evidence from which a reasonable trier of fact could conclude that Triad breached any fiduciary duty it owed St. Clair, as Triad had no duty to advise St. Clair about what was and was not in the loan documents.

Triad next argues that it is entitled to summary judgment on St. Clair's claim for rescission of the brokerage agreement, as well as on Triad's counterclaim for recovery of the brokerage fee. This argument depends upon Triad prevailing in its arguments on the negligent misrepresentation and breach of fiduciary duty claims, in which case it could not be said that the loan did not close through any fault of Triad. Lastly, Triad argues that under any theory of recovery, St. Clair's damages are not recoverable from Triad because such damages flowed from St. Clair's breach of its agreement with Nationwide to close the loan by the extended date for closure, which was subsequent to when St. Clair knew the true amount of the letter of credit that was required.

## **DISCUSSION**

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment shall be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, a court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party.

5

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In a diversity case, a federal district court is to apply the law of the forum state. Orion Fin. Corp. of SD v. Amer. Foods Group, Inc., 281 F.3d 733, 738 (8th Cir. 2002). The brokerage agreement appears to have been executed in Missouri and the parties appear to agree that Missouri Law governs (the same law that governs the loan application agreement). As the parties recognize, the elements of a negligent misrepresentation claim under Missouri law are as follows: "(1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss." Miller v. Big River Concrete, LLC, 14 S.W.3d 129, 133 (Mo. Ct. App. 2000).

Even if the relationship of the parties is not one under which the speaker generally had an affirmative duty to disclose information, sometimes, once the speaker assumes the responsibility of providing information, a duty to use due care in providing such information may arise; whether a duty arises to provide accurate information "is based upon the particular facts of the case." Frame v. Boatmen's Bank of Concord Village, 824 S.W.2d 491, 494 (Mo. Ct. App. 1992). In addition, the reasonableness of a plaintiff's reliance "is normally a matter for the jury's determination." Id. at 493; see also Miller, 14 S.W.3d at 133. The Court concludes that to be the case here, and that Triad has not

6

established its right to judgment as a matter of law on the misrepresentation claim.

Similarly, the Court concludes that genuine issues of material fact remain with regard to St. Clair's claim that Triad breached a fiduciary duty owed St. Clair. Missouri law recognizes that a fiduciary duty may arise as a matter of law by virtue of the parties' relationship, and also "as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998) ("[w]hen an insurance broker agrees to obtain insurance for a client, with a view to earning a commission, the broker becomes the client's agent and owes a duty to the client to act with reasonable care, skill, and diligence"); see also Jefferson v. Am. Fin. Group, Inc., 163 S.W.3d 485, 487 (Mo. Ct. App. 2005) (accepting trial court's assumption that mortgage broker owed a fiduciary duty to individual who sought its help in refinancing her house). The questions of whether a fiduciary relationship existed, and if so, whether it was breached, cannot be determined at this point of the proceedings as a matter of law.

As a result of the above conclusions, it cannot now be determined whether or not Triad is entitled to the brokerage fee, under the terms of the brokerage agreement. The Court is unpersuaded by Triads's final argument that St. Clair's damages are not recoverable against Triad as a matter of law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that third-party Defendants' motion for summary judgment on the third-party complaint is **DENIED**. [Doc. #74]

**IT IS FURTHER ORDERED** that third-party Defendant's motion for summary judgment on the third-party counterclaim is **DENIED**. [Doc. #74]

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of August, 2006.