UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY, | ) ) ) |
|    Plaintiff/Counterclaim Defendant, | ) ) |
| vs. | ) ) |
| ST. CLAIR MOBILE HOME PARKS, LLC, | ) ) ) |
|    Defendant/Counterclaim Plaintiff/       Third Party Plaintiff/       Third Party Counterclaim Defendant, | ) ) ) ) |
| vs. | ) ) |
| TRIAD CAPITAL ADVISORS, INC., and JOSEPH MONTELEONE, | ) ) ) |
|    Third Party Defendants/    Third Party Counterclaim Plaintiffs. | ) ) |

Case No. 4:04CV01746 AGF

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of St. Clair Mobile Home Parks, LLC ("St. Clair") for partial summary judgment with regard to limiting the damages recoverable by Nationwide Life Insurance Company ("Nationwide"). For the reasons set forth below, St. Clair's motion shall be denied.

## BACKGROUND

In May 2004, St. Clair submitted an application to Nationwide for a commercial "securitized mortgage loan" in the amount of $13,250,000 for a term of ten years at a fixed interest rate of 6.33 percent. The loan was to be secured by a deed of trust on

property owned by St. Clair. The application stated that it was issued through a loan correspondent, Triad Capital Advisors, Inc., with Joseph Monteleone acting on behalf of Triad.

The application required St. Clair to pay a Commitment Fee of $397,500 (3 percent of the loan amount), which was to be returned to St. Clair upon the closing of the loan. The loan was scheduled to close by July 13, 2004, by which time St. Clair was to provide Nationwide with a letter of credit in an amount to be calculated by a formula set forth in an exhibit to the application.

Paragraph 13 of the application provided as follows:

If [St. Clair] withdraws the application before Nationwide approves or disapproves the Application or if there is a misrepresentation of any material fact in the Application, [St. Clair] shall indemnify and hold Nationwide harmless for any actual loss, cost or expense (including any hedging costs) incurred by Nationwide arising from such withdrawal or misrepresentation by [St. Clair].

Paragraph 14 provided that if the loan did not close due to St. Clair's failure to fulfill the terms and conditions of the application, the application would be cancelled, and upon cancellation, "Nationwide shall have the right to retain the Commitment Fee in full and in addition, to pursue all legal and equitable remedies available to Nationwide, including without limitation, legal action to collect provable damages (including loss of bargain) in excess of the Commitment Fee."

Paragraph 31 provided:

Whether or not closing occurs, [St. Clair] agrees to pay or reimburse Nationwide for all fees and expenses incidental to the Mortgage Loan herein contemplated, including, but not limited to, legal fees, Commitment Fee, M.A.I. Appraisal Fee, Inspecting Architect Fee,

2

survey fee, Processing Fee, title fee, environmental engineer and/or consultant fees, and closing costs.

By letter dated June 14, 2004, Nationwide accepted St. Clair's application subject to certain "clarifications," which St. Clair accepted on June 17, 2004. St. Clair completed payment of the Commitment Fee, for a total of $397,500. St. Clair was then unable to provide the required letter of credit by the closing date, which had been extended to November 29, 2004, and on December 2, 2004, Nationwide liquidated its hedge. In a letter dated December 3, 2004, Nationwide notified St. Clair that it was exercising its option to cancel the application and to terminate all of Nationwide's obligations thereunder. In this letter, Nationwide demanded reimbursement for its damages under "Paragraph 31," which it claimed consisted of "Hedge Loss in the amount of $968,000, and Legal Fees in the amount of $17,266.88; the total offset by the Commitment Fee." Thus, Nationwide demanded a total of $587,766.88. St. Clair's Ex. 6.

On December 14, 2004, Nationwide filed this diversity action against St. Clair for breach of contract. Nationwide claimed that it had incurred legal fees and costs in connection with the loan, and that it had been "further damaged through the lost use of the Mortgage Loan funds and has been prevented from loaning such funds to other persons. Nationwide has also been damaged through the lost benefit of its bargain, including interest and other amounts that it is entitled to receive under the Application." Nationwide asserted that after giving St. Clair all credits to which it was due, Nationwide's "ascertainable" damages were "approximately $500,000," which were the

3

"direct and proximate result" of St. Clair's breach of the application. Compl. at ¶¶ 26-29.

On July 13, 2005, this Court granted partial summary judgment to Nationwide concerning St. Clair's liability. The Court held that by failing to provide the letter of credit as required in the application, St. Clair had breached the agreement between the parties. St. Clair then filed the present motion for partial summary judgment on the issue of damages, seeking to bar all recovery beyond Nationwide's retention of St. Clair's Commitment Fee, and particularly to bar Nationwide from collecting damages due to any hedge losses. According to Nationwide's memorandum in opposition to St. Clair's motion, Nationwide seeks to recover damages, as of March 16, 2006, less the Commitment Fee, as follows:

| | |
|---|---|
| Damages in connection with the hedge transaction: | $912,341.49 |
| Lost profits from loss of benefit: | $366,948.25 |
| Legal fees and expenses incidental to the loan: | $ 17,266.88 |
| Legal fees and expenses incidental to this lawsuit: | $283,000.00 |

## **ARGUMENTS OF THE PARTIES**

St. Clair asserts that there are no issues of material fact, and that it is entitled to judgment as a matter of law to the effect that Nationwide cannot recover any damages in addition to the $397,500 Commitment Fee already paid by St. Clair. Specifically, St. Clair argues that (1) paragraph 14 of the application provides for liquidated damages in the amount of the Commitment Fee, and Nationwide cannot collect both liquidated and actual damages; (2) Nationwide cannot recover its alleged hedge losses under paragraph 13 of the application, as St. Clair did not breach the agreement through a misrepresentation of material fact or withdrawal of its application before approval; (3)

4

Nationwide cannot recover its alleged hedge losses under paragraph 31of the application, as the alleged hedge losses are not "fees and expenses incidental to the mortgage loan"; and (4), even if the Court were to decide that paragraph 14 does not contain a preclusive liquidated damages clause, the alleged hedge losses are not recoverable because such damages were not reasonably foreseeable and were not contemplated by the parties.

In support of its motion, St. Clair submits Monteleone's deposition testimony that he never mentioned hedging to St. Clair, and that he knew nothing about Nationwide's practice of hedging and had no understanding of how Nationwide would handle the "rate risk" involved with this transaction. He further testified that he did not have any understanding, "from an industry point of view," of how insurance companies typically protect themselves against the rate risk inherent in these types of transactions, other than through commitment fees. Monteleone further testified that he was not "familiar with" the mention of hedging costs in the application, and that he told St. Clair that if it "walked away from the loan," it would forfeit its deposits. St. Clair's Ex. 1.

St. Clair has also submitted an affidavit of Maha Alul, the managing member of St. Clair, in which she attests that no one from Nationwide or Triad ever explained to St. Clair "the process of hedging or the implications of a hedge loss." St. Clair's Ex. 2

St. Clair argues that Nationwide's hedge losses are not recoverable as damages because the placement and liquidation of the hedge was at the sole discretion and for the sole benefit of Nationwide. St. Clair also argues that the hedge losses are special damages which Nationwide is precluded from recovering because they were not specifically set out in Nationwide's complaint, as required by Federal Rule of Civil

5

Procedure 9(g).

Nationwide concedes that it is not attempting to collect for hedge losses under paragraphs 13 or 31 of the application. It argues, however, that (1) paragraph 14 is not a liquidated damages clause when read in its entirety; (2) any ambiguity regarding paragraph 14 creates an issue of fact; and (3) whether or not Nationwide's hedge losses are "provable damages" creates a factual dispute.

## **DISCUSSION**

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment shall be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, a court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catratt, 477 U.S. 317, 323 (1986).

In this diversity case, Missouri law applies. See Orion Fin. Corp. of SD v. Amer. Foods Group, Inc., 281 F.3d 733, 738 (8th Cir. 2002). The parties agree that Missouri law controls, as the loan application specifically provides that the rights and obligations of the parties were to be governed by, and construed in accordance with, the law of the state where the property securing the loan was located, and the apartment complex that was to secure the loan is located in Missouri.

Missouri law provides that "[t]he cardinal principle of contract interpretation is to

6

ascertain the intention of the parties and to give effect to that intent." Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. 2003) (en banc). Missouri law further provides that in construing contractual provisions, a court "is to avoid an interpretation that renders other provisions meaningless. It is preferable to attribute a reasonable meaning to each clause and harmonize all provisions, rather than leave some provisions non-functional and nonsensical." Nodaway Valley Bank v. E.L. Crawford Constr., Inc., 126 S.W.3d 820, 827 (Mo. Ct. App. 2004) (citations omitted).

Missouri recognizes the general principle

> first, that damages which may fairly and reasonably be considered as naturally arising from a breach of contract, according to the usual course of things, are always recoverable; and, second, that damages which would not arise in the usual course of things from a breach of the contract, but which do arise from circumstances peculiar to the special care [sic], are not recoverable unless the special circumstances are known or have been communicated to the person who breaks the contract.

W. C. Hardesty Co. v. Schaefer, 139 S.W.2d 1031, 1035 (Mo. Ct. App. 1940).

"Ordinarily if it appears that the parties in good faith agreed upon a sum as the damages which would probably ensue if the contract should be breached, the stipulation is for liquidated damages, provided the agreement is reasonable." Zeppenfeld v. Morgan, 185 S.W.2d 898, 904-05 (Mo. Ct. App. 1945). Furthermore, "liquidated and actual damages may not be awarded as compensation for the same injury." Germany v. Nelson, 677 S.W.2d 386, 388 (Mo. Ct. App. 1984). This "rule of law has developed in order to protect against the wrong of duplicating damages." Jerry Bennet Masonry, Inc. v. Crossland Constr. Co., 171 S.W.3d 81, 94 (Mo. Ct. App. 2005).

The Court has some difficulty determining that the parties intended the language

7

of paragraph 14 to create a liquidated damages provision. To the contrary, this paragraph expressly states that Nationwide shall be entitled to bring a "legal action to collect provable damages (including loss of bargain) in excess of the Commitment Fee." The interpretation proffered by St. Clair would read this language out of the contract, contrary to Missouri law, as expressed in <u>Nodaway</u>, 126 S.W.3d at 827, and <u>Dunn</u>, 112 S.W.3d at 428.

St. Clair asserts that the facts of this case are "virtually identical" to those in <u>Continental Assurance Co. v. Van Celeve Building & Construction Co.</u>, 260 S.W.2d 319 (Mo. Ct. App. 1953), and that based upon that case, paragraph 14 should be interpreted as a liquidated damages clause. As in the current case, the plaintiff in <u>Continental</u> was a lender seeking to recover damages from a borrower's breach of a loan commitment agreement. The contract in controversy read in pertinent part, "Standby interest to be payable upon termination of commitment, but is to be waived completely if the note and mortgage papers are delivered to us in accordance with the terms and conditions hereof." <u>Id.</u> at 320. The borrower argued that the lender had no right to charge interest so long as they retained use of the money. The court disagreed, holding that while the loan commitment did not specifically provide that the standby interest constituted liquidated damages, it was apparent that was its object and purpose, and the court accordingly held that the lender could keep the standby interest. <u>Id.</u> at 324.

Thus, <u>Continental</u>, as well as the other Missouri cases relied upon by St. Clair, holds that when an amount, such as standby interest or a commitment fee, is found to constitute liquidated damages, it can be retained or recovered by a non-breaching party.

This, however, fails to answer the question presented in the present case of whether a non-breaching party is limited to recovering a commitment fee when the written agreement between the parties specifically provides that the non-breaching party may recover other damages as well.

St. Clair also relies upon a case from Kentucky, Capital Holding Corp. v. Octagon Development Co., 757 S.W.2d 202 (Ky. Ct. App. 1988), in which a lender sought to recover lost profits for breach of a loan commitment under a provision that is more similar to paragraph 14. In that case the agreement read, "If the Commitment is accepted but the Loan is not closed, Lender shall retain the refundable deposit in addition to the other fees and shall have all other remedies available at law or equity against Borrower for failure to comply with any of the terms or conditions of this Commitment." Id. at 203. The court in Capital Holding found that it was not in the contemplation of the parties that upon the borrower's failure to close the loan in question, the lender would be entitled to recover both the commitment deposit and lost profits equal to the amount of interest the lender would have earned if the loan had been issued. Id. at 204-06. That court declared the "other remedies" provision to be against public policy because it would award the lender interest which it did not earn, as it never made the loan. Id.

Capital Holding is distinguishable because there the court found that the lender did not suffer any actual damages, and was nevertheless seeking both the commitment fee and lost profits. It was on this basis that the Kentucky court found that it was against public policy to allow the recovery of interest that would have been earned. Id. at 106. The lost profits were also described as speculative. Moreover, St. Clair does not cite, nor

9

is the Court aware of, any other cases which follow this reasoning, and the Court does not believe that Missouri courts would do so. See Jerry Bennet Masonry, Inc., 171 S.W.3d at 94 (affirming the award of actual damages in addition to liquidated damages when provided for in a contract, and when the actual damages were not for the same injury as the liquidated damages); cf. Hoelscher v. Schenewerk, 804 S.W.2d 828, 831-32 (Mo. Ct. App. 1991) (allowing actual damages under a contract clause which permitted seller to accept earnest money as damages or pursue other remedies, including actual damages, where seller credited buyer for earnest money).

  St. Clair is correct that Rule 9(g) of the Federal Rules of Civil Procedure requires Nationwide to specifically state its special damages in its complaint. The Eighth Circuit defines general damages as those damages which are both natural and necessary consequences of the breach, and special damages as those damages which are natural but not necessary consequences of the breach. Burlington Transp. Co. v. Josephson, 153 F.2d 372, 377 (8th Cir. 1946). Under this definition, Nationwide's hedge losses appear to be special damages. However, the reason for Rule 9(g) is to protect a defendant from being surprised at trial by the extent and character of the plaintiff's claim. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1310 (3d ed. 2006). Nationwide did plead damages of approximately $500,000, and in light of the record and the motion now before the Court, it can hardly be said that Nationwide's failure to mention hedge loss in its complaint prejudiced St. Clair in any way.

  St. Clair also argues that Nationwide cannot recover for hedge losses because these loses were unforeseeable to St. Clair, as they would have been to any reasonable

10

borrower. It maintains that any reasonable borrower would not have foreseen that it would be required to pay more than its Commitment Fee should it breach the application. St. Clair, however, ignores the specific contract language of paragraph 14, entitling Nationwide to recover damages beyond the Commitment Fee. Paragraph 13 specifically mentions "hedging costs," which arguably may have put a reasonable borrower on notice that Nationwide anticipated placing a hedge in connection with this transaction, and that Nationwide might sustain damages as a result. Given that the contract language alone is not decisive, St. Clair has not presented sufficient evidence upon which the Court might conclude as a matter of law that loses from placing a hedge could not naturally arise "according to the usual course of things," under the circumstances of the loan transaction involved in this case, such that a reasonable borrower would not have foreseen hedge losses as potential recoverable damages.

At trial, St. Clair might present convincing evidence that the hedge losses Nationwide claims were not reasonably foreseeable. The Court's present conclusion is simply that St. Clair has not established this as a matter of law. Furthermore, Nationwide's proof of claimed damages might be too speculative or remote to permit recovery. Under Missouri law, "[l]osses must be made reasonably certain by proof of actual facts which present data for a rational estimate without resorting to speculation." Comty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 670 S.W.2d 895, 906 (Mo. Ct. App 1984) (bank failed to produce sufficient evidence at trial to recover alleged lost profits acceleration of loans would have brought upon reissuance of loans at a higher rate of interest); see also Tipton v. Mill Creek Gravel, Inc., 373 F.3d 913, 918 (8th Cir. 2004)

11

(under Missouri law, the proof required to sustain loss profits is "exacting") (citations omitted).

St. Clair may also show that Nationwide could have mitigated any hedge losses. In no event will Nationwide be permitted to recover duplicate damages, to the extent that alleged hedge losses duplicate alleged lost profits. However, based upon the record before it, this Court cannot say that as a matter of law Nationwide is limited to retention of the Commitment Fee as its damages for St. Clair's breach of the application agreement, nor can the Court say that Nationwide cannot recover its hedge losses as a matter of law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for partial summary judgment limiting the damages recoverable by the Plaintiff is **DENIED**. [Doc. # 64 ]

**IT IS FURTHER ORDERED** that Nationwide shall have 15 days from the date of this order to amend its complaint to specifically state its special damages.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of August, 2006